Filed 3/17/22

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| In re JASON SCOTT HARPER<br><br>on Habeas Corpus. | E076045<br><br>(Super.Ct.No. RIF100702)<br><br>OPINION |

ORIGINAL PROCEEDINGS; petition for writ of habeas corpus. John D. Molloy, Judge. Petition denied.

Michael J. Brennen and Heidi L. Rummel for Petitioner.

Xavier Becerra and Rob Bonta, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Daniel Rogers, Lisa Jacobson and Kristen Kinnaird Chenelia, Deputy Attorneys General, for Respondent.

1

In 2002, a jury convicted petitioner Jason Scott Harper of felony murder and found true a robbery-murder special circumstance allegation for his participation in the robbery of a store, which resulted in the murder of the store's manager. Although he was 16 years old at the time of the robbery, the trial court sentenced petitioner to state prison for life without the possibility of parole. This court affirmed the judgment on direct appeal in 2004 but, more than a decade later, the trial court resentenced petitioner to 25 years to life after a federal district court issued a writ of habeas corpus.

In *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*), the California Supreme Court clarified what it means to be a "major participant" in an underlying felony and what it means for a defendant to have acted with "reckless indifference to human life" for purposes of the murder special circumstance under Penal Code[1] section 190.2, subdivision (d), applicable to someone who is not the actual killer. Petitioner filed this petition for writ of habeas corpus in the California Supreme Court and argued the jury's robbery-murder special circumstance finding must be vacated because, considering *Banks* and *Clark*, the evidence does not establish he was a major participant in the robbery or that he acted with reckless indifference to human life. The Supreme Court directed the Secretary of the Department of Corrections and Rehabilitation to show cause before this court why petitioner is not entitled to relief. (*In re Harper on Habeas Corpus*, Oct. 28, 2020, S259563.)

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

2

Having received and considered petitioner's petition, informal reply, and traverse, and the Attorney General's informal response and return to the petition, we deny the petition. The evidence in the record of conviction shows petitioner was a major participant in the robbery, and he acted with reckless indifference to human life, so the jury's special circumstance finding must stand.

## I.

## FACTS[2]

"[Petitioner] and his codefendant Anthony Brown . . . lived at a trailer park in Rubidoux. Brown was 28. [Petitioner] was 16 but told everyone at the trailer park he was 19. Brown was the dominant one in the relationship. Sometimes he beat [petitioner], leaving him black and blue. At the time of the crime, he was trying to get legal custody of [petitioner].

"Melissa Rogers was also a resident of the trailer park.

"Victim Jamaloddin Doroudi owned and operated the 99 Cent Store in Rubidoux. He was known to keep large amounts of cash in his wallet. [Petitioner] and Brown were

---

[2] On the court's own motion, we take judicial notice of the records and nonpublished opinions in petitioner's prior appeals: *People v. Brown et al.* (Jan. 7, 2004, E032616) [nonpub. opn.], *People v. Harper* (June 14, 2016, E063475) [nonpub. opn.], and *People v. Harper* (Mar. 19, 2020, E073615) [nonpub. opn.]. (Evid. Code, §§ 452, 459; Cal. Rules of Court, rule 8.1115(b).)

We quote the statement of facts from *People v. Harper*, *supra*, E063475, this court's 2016 opinion in a postjudgment appeal from the initial denial of petitioner's request to be resentenced pursuant to *Miller v. Alabama* (2012) 567 U.S. 460. That statement of facts was itself a summary of the more detailed and lengthy statement of facts from *People v. Brown et al.*, *supra*, E032616, this court's opinion in the direct appeal from petitioner's conviction and original sentence.

3

regular customers of his store. A week or two before the crimes, [petitioner] shoplifted multiple pairs of handcuffs from the store.

"On November 28, 2001, Brown drove Rogers and [petitioner] to the 99 Cent Store. Between 9:30 and 10:00 p.m., they pulled up and parked in front of the store. Brown got out and knocked on the door. The victim opened a security gate and let him in. [Petitioner] and Rogers went in behind Brown.

"[Petitioner] was carrying Brown's sawed-off 12-gauge shotgun. He handed it to Brown. Brown and Rogers then took the victim into a bathroom, where Brown handcuffed him to the toilet. They asked him where the safe was, but he would not tell them.

"Meanwhile, [petitioner] stayed in the front section of the store. He took all of the money from the cash register. Rogers came out and asked him where she could find some knives. He pointed to where they were in the store. Rogers got a knife, then went back.

"Rogers used the knife to cut the victim's throat. However, the wound was not deep enough to cause death. She turned to Brown and said, 'The son of a bitch won't die.' Brown then shot him in the chest with the shotgun. This wound was fatal.

"Brown and Rogers took the victim's wallet, which turned out to contain $20,000. When they got back to the trailer park, [petitioner] joked that they could do their laundry because he had taken all the quarters from the cash register. That night and over the following days, [petitioner], Brown, and Rogers were seen flaunting hundreds and

4

thousands of dollars; they gave money to friends and relatives and went on a spending spree.

"[Petitioner] and Brown fled to Reno. A little over a week after the shooting, they were arrested there. They were in possession of a DVD player, a VCR, and a stereo taken from the 99 Cent Store.

"[Petitioner] gave a statement to the police. He admitted knowing that Brown and Rogers were going to commit a robbery. He claimed that he went along only because he did not want to stay at the trailer park with Brown's brother Chris, not because he intended to participate.

"[Petitioner] also admitted seeing Brown and Rogers 'checking . . . out' a shotgun before going to commit the robbery. However, when they left the trailer park, he did not see anyone carrying it, so he thought they had left it behind. Rogers borrowed a pair of handcuffs from defendant.

"Brown and Rogers went in the store first; pursuant to Brown's instructions, [petitioner] went in when he saw the lights go off. Brown came out from a back room and said, 'I don't know about this.' [Petitioner] replied, '[W]hatever you want to do is fine with me . . . just as long as I'm not involved.' [Petitioner] admitted acting as a lookout. He also admitted taking DVD players and a stereo. He admitted opening the cash register, but he claimed it was already empty.

"[Petitioner] further admitted that, when Rogers asked him where the knives were, he thought, '[A]re they gonna stab him . . . ?' Brown gave him a VCR and told him to

5

wait in the car.  About five minutes later, Brown and Rogers came out and all three left.

Rogers gave [petitioner] $6,000.

"[Petitioner] denied knowing that the victim was dead until days later.  However, he had told others that he heard the shotgun go off while he was at the front door."

(*People v. Harper*, *supra*, E063475.)

## II.

## PROCEDURAL BACKGROUND[3]

In 2002, a jury convicted petitioner of one count of first degree murder (§ 187, subd. (a)) and found true a robbery-murder special circumstance allegation (§ 190.2, subd. (a)(17)(A)).  The trial court sentenced him to life without the possibility of parole (LWOP).

On direct appeal, petitioner argued:  (1) insufficient evidence supported the jury's findings that he acted with reckless indifference to human life to support the special circumstance finding; (2) the trial court abused its discretion when it failed to exercise its

---

**3** Separately, in 2020, petitioner filed a petition for resentencing in the trial court pursuant to section 1170.95.  He argued that he could no longer be convicted of felony murder under amendments made to sections 188 and 189 (Stats. 2018, ch. 1015, §§ 2, 3) by Senate Bill No. 1437 (2017-2018 Reg. Sess.).  That bill limited the offense of murder under the felony-murder rule to defendants who:  (1) are the actual killer; (2) are not the actual killer but who share the killer's intent to kill and aid and abet in the killing; or (3) are a major participant in a felony and who act with reckless indifference to human life.  It further eliminated the offense of murder under the natural and probable consequences doctrine for defendants who are not the actual killer.  (*People v. Gentile* (2020) 10 Cal.5th 830, 846, 848.)

In a separate opinion, we affirmed the denial of the petition for resentencing. (*People v. Harper* (Jan. 14, 2022, E074670) [nonpub. opn.], petn. for review pending, petn. filed Feb. 15, 2022, S273175.)  On our own motion, we take judicial notice of the record in that proceeding.  (Evid. Code, §§ 452, subd. (d), 459, subd. (a).)

discretion to sentence him to 25 years to life instead of LWOP; and (3) his sentence of LWOP was cruel and/or unusual punishment under the federal and state constitutions. (*People v. Brown et al.*, *supra*, E032616.)

This court concluded the evidence did support the jury's finding that petitioner acted with reckless indifference to human life. (*People v. Brown et al.*, *supra*, E032616.) We stated:

"Here, [petitioner] knew in advance that Brown and Rogers were going to commit a robbery. He admitted seeing them with the shotgun while they were all still at the trailer, and he admittedly knew they were 'checking it out . . . before going to do the 99 Cent Store.' He also claimed, of course, that he did not see either of them bring the shotgun along on the robbery; the jury, however, did not have to believe this.

"[Petitioner] admittedly acted as a lookout and took loot from the store. When Brown came out and asked if he was all right, he replied, '[Y]eah[,] cool, just . . . do whatever you need to do so we can get out of here and hurry up.' Next, Rogers came out and said, '[W]e need some knives.' [Petitioner] admitted thinking, '[A]re they gonna stab him . . . ?' Nevertheless, he told her where to find knives. Finally, he admitted to his mother that he brought the shotgun into the store and handed it to Brown.

"Immediately after the murder, [petitioner] told Alysia that he heard the gun go off. He was there when Brown bragged that he 'blew [the victim's] ass away.' Meanwhile, Alysia testified, [petitioner] was 'making smart aleck comments' and 'joking like [he] didn't care . . . .'

"In sum, . . . there was evidence that [petitioner] knew that his accomplices intended to commit a robbery while armed with a deadly weapon. He personally carried away some of the loot. Even more important, while the robbery was in progress, he furnished them with the shotgun and also with knives, despite admittedly thinking that the knives might be used to stab the victim. It was fairly inferable that he knew there was a grave risk that death could result. He heard the gunshot, yet he made no attempt to help the victim; instead, he carried a VCR out to the car, then fled with his cohorts, leaving the victim to die alone, next to a toilet; under Hodgson, this alone would be sufficient. Afterwards, he joked about the robbery. We conclude that this constituted substantial evidence that [petitioner] acted with reckless indifference to human life." (*People v. Brown et al.*, *supra*, E032616.)

Moreover, in the context of addressing petitioner's claim that his sentence of LWOP violated the Sixth Amendment's prohibition on cruel and unusual punishment, this court concluded the record contained substantial evidence he was a major participant in the robbery. (*People v. Brown et al.*, *supra*, E032616.) We stated:

"Separately and alternatively, we also reject [petitioner's claim] on the authority of *Tison v. Arizona* (1987) 481 U.S. 137, 154 [107 S.Ct. 1676, 95 L.Ed.2d 127]. *Tison* featured two young defendants (aged 19 and 20) with no prior records. (*Id*. at pp. 142-143.) They were found guilty of capital murder, under the felony-murder rule, as accomplices to a robbery and/or kidnapping. (*Id*. at pp. 141-142.) Neither of them was the actual killer; neither of them acted with intent to kill. (*Id*. at pp. 138, 143.) The United States Supreme Court held that the death penalty was not a disproportionate

8

penalty under these circumstances, provided the defendants were major participants in the underlying felony and acted with reckless indifference to human life.  (*Id*. at p. 158.)

"As we discussed . . . , *ante*, substantial evidence supports the jury's finding that [petitioner] was a major participant in the underlying robbery and that he acted with reckless indifference to human life."  (*People v. Brown et al*., *supra*, E032616.)

The Supreme Court denied petitioner's petition for review.  (*People v. Brown* et al., review denied Mar. 30, 2004, S122525.)

In 2015, the trial court denied petitioner's request to be resentenced to 25 years to life pursuant to *Miller v. Alabama*, *supra*, 567 U.S. 460.  This court affirmed that order, and the California Supreme Court denied review.  (*People v. Harper*, *supra*, E063475, review denied Sept. 21, 2016, S236073.)  However, a federal district court issued a writ of habeas corpus directing the trial court to resentence petitioner pursuant to *Miller*. (*Harper v. Davey* (C.D. Cal., Nov. 28, 2017, No. ED CV-16-02250-JFW (KES)) 2017 U.S. Dist. Lexis 196344.)  Thereafter, the trial court resentenced him to 25 years to life.

In 2017, the trial court denied a petition for writ of habeas corpus in which petitioner challenged the jury's special circumstance finding pursuant to *Banks*, *supra*, 61 Cal.4th 788.  Petitioner also filed a petition for writ of habeas corpus on the same grounds in this court, which was summarily denied.  (*In re Harper on Habeas Corpus,* Dec. 18, 2018, E071438.)

The instant proceeding followed.

9

DISCUSSION

Petitioner argues the jury's special circumstance finding is no longer viable after the decisions in *Banks*, *supra*, 61 Cal.4th 788 and *Clark*, *supra*, 63 Cal.4th 522 because the evidence does not establish he was a major participant in the robbery and that he acted with reckless disregard for human life. We disagree and deny his petition.

"Murder is the unlawful killing of a human being, or a fetus, with malice aforethought." (§ 187, subd. (a).) Murder committed during the perpetration of a robbery (felony murder) is first degree murder. (§ 189, subd. (a).) An accomplice convicted of first degree murder who was "not the actual killer" may be sentenced to death or life without the possibility of parole if one or more special circumstance is found true. (§ 190.2, subds. (c), (d).) As relevant here, the accomplice must be "a major participant" in the robbery who acted "with reckless indifference to human life." (§ 190.2, subds. (a)(17)(A), (d).) The law "thus imposes both a special actus reus requirement, major participation in the crime, and a specific mens rea requirement, reckless indifference to human life." (*Banks*, *supra*, 61 Cal.4th at p. 798.) "'These requirements significantly overlap . . . for the greater the defendant's participation in the felony murder, the more likely that he acted with reckless indifference to human life.'" (*Clark*, *supra*, 63 Cal.4th at p. 615.)

As noted, in *Banks*, *supra*, 61 Cal.4th 788 and *Clark*, *supra*, 63 Cal.4th 522 our Supreme Court "clarified the meaning of the special circumstances statute." (*In re Scoggins* (2020) 9 Cal.5th 667, 671.) In *Banks*, the court held a "major participant" in a

robbery is someone whose "personal involvement" is "substantial" and "greater than the actions of an ordinary aider and abettor . . . ." (*Banks*, *supra*, 61 Cal.4th at p. 802.) However, he or she "need not be the ringleader." (*People v. Williams* (2015) 61 Cal.4th 1244, 1281, cited with approval in *Clark*, at pp. 614, 619)

Determining whether a defendant was a major participant requires consideration of the totality of the circumstances. (*Banks*, *supra*, 61 Cal.4th at p. 802.) *Banks* identified five nonexclusive[4] factors for evaluating the extent of a defendant's participation: "[(1)] What role did the defendant have in planning the criminal enterprise that led to one or more deaths? [(2)] What role did the defendant have in supplying or using lethal weapons? [(3)] What awareness did the defendant have of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants? [(4)] Was the defendant present at the scene of the killing, in a position to facilitate or prevent the actual murder, and did his or her own actions or inaction play a particular role in the death? [and (5)] What did the defendant do after lethal force was used?" (*Id*. at p. 803, fn. omitted.) None of the factors the court expressly articulated is necessary or necessarily sufficient, and all must be weighed in determining the ultimate question of "whether the defendant's participation 'in criminal activities known to carry a grave risk of death' [citation] was sufficiently significant to be considered 'major.'" (*Id*. at p. 803.)

---

**4** The court stated the five factors were "[*a*]*mong* those factors" that bear on "determining whether a defendant's culpability is sufficient" to find true a special circumstance finding. (*Banks*, *supra*, 61 Cal.4th at p. 803, italics added.)

11

In *Clark*, the court noted reckless indifference to human life "may be 'implicit in knowingly engaging in criminal activities known to carry a grave risk of death.'" (*Clark*, *supra*, 63 Cal.4th at p. 616.) "'[T]he defendant must be aware of and willingly involved in the violent manner in which the particular offense is committed,' and he or she must consciously disregard 'the significant risk of death his or her actions create.'" (*In re Scoggins*, *supra*, 9 Cal.5th at p. 677, quoting *Banks*, *supra*, 61 Cal.4th at p. 801 and citing *Clark*, at p. 617.) However, the court cautioned that merely participating in an armed robbery is not enough to show reckless indifference to human life. (*Clark*, at pp. 615-616, 623; accord, *In re Scoggins*, at p. 677; *Banks*, at pp. 808, 810.)

Courts must view the totality of the circumstances to determine whether the defendant acted with reckless indifference to human life. (*In re Scoggins*, *supra*, 9 Cal.5th at p. 677.) *Clark* identified five relevant, but nonexclusive,[5] factors for evaluating this subjective requirement: (1) the "defendant's awareness that a gun [or other deadly weapon] will be used," whether the defendant personally used a lethal weapon, and the number of lethal weapons used; (2) the defendant's "[p]roximity to the murder and the events leading up to it" and opportunity to either restrain the crime or aid the victim; (3) whether the murder took placed "at the end of a prolonged period of restraint of the victim[] by the defendant"; (4) the "defendant's knowledge of . . . a cohort's likelihood of killing"; and (5) whether the defendant made an "effort[] to

---

[5] As in *Banks*, the court in *Clark* stated the factors it listed were merely "*some* of the case-specific factors" courts had identified for determining whether a defendant acted with reckless indifference for human life. (*Clark*, *supra*, 63 Cal.4th at p. 618, italics added.)

minimize the risks of violence in the commission of a felony . . . ." (*Clark*, *supra*, 63 Cal.4th at pp. 618-622.) Again, no single factor is necessary, nor is any one necessarily sufficient. (*Id*. at p. 618.)

We must apply the deferential substantial evidence standard of review to assess petitioner's claim that the jury's special circumstance finding is not supported by the record. (*Banks*, *supra*, 61 Cal.4th at p. 804; *Clark*, *supra*, 63 Cal.4th at p. 610.) We ask "whether, when evidence that is reasonable, credible, and of solid value is viewed 'in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the [special circumstance] beyond a reasonable doubt.'" (*Clark*, at p. 610.) "We presume, in support of the judgment, the existence of every fact the trier of fact could reasonably deduce from the evidence, whether direct or circumstantial." (*Ibid*.)

### A.     Major Participant.

Applying the factors identified by *Banks*, and viewing the totality of the circumstances, we conclude petitioner was a major participant in the robbery.

As for the first factor, "What role did the defendant have in planning the criminal enterprise that led to one or more deaths," (*Banks*, *supra*, 61 Cal.4th at p. 803) petitioner contends he was not involved in the actual planning of the robbery and made a last-minute decision to join Brown and Rogers. True, as this court concluded in petitioner's direct appeal, "evidently [he] did not plan the robbery, [although] he was present when it was being planned." (*People v. Brown et al.*, *supra*, E032616.) However, although petitioner claimed he only went along because he did not want to stay alone at the trailer

13

park (*ibid.*), a reasonable trier of fact could conclude from other evidence—for example, from his theft of the handcuffs from the same store one or two weeks prior—he intended to participate from the get-go. In any event, the first factor does not weigh heavily against petitioner.

With respect to the second factor, "What role did the defendant have in supplying or using lethal weapons," (*Banks*, *supra*, 61 Cal.4th at p. 803) petitioner argues there is no evidence he "procured" the shotgun or the knife for the purpose of committing the robbery. True, the evidence shows Brown already owned the shotgun before the robbery. (*People v. Brown et al.*, *supra*, E032616.) But, petitioner was not a mere bystander when it came to the deadly weapons used during the robbery. Although he told the police he did not see anyone carrying the shotgun when they left the trailer park, and he believed it had been left behind, he told his mother he was the one who brought the shotgun into the store and handed it to Brown. (*Ibid.*) And, when Rogers came out and asked where she could find some knives, petitioner directed her to the correct store aisle. (*Ibid.*) As this court concluded in petitioner's direct appeal, he furnished his confederates with their weapons. (*Ibid.*) We therefore agree with the Attorney General that petitioner "played a significant role in arming Brown and Rogers."

For the third factor, "What awareness did the defendant have of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants," (*Banks*, *supra*, 61 Cal.4th at p. 803) petitioner argues there is no evidence he "was aware of any particular heightened risk of death relative to an ordinary armed robbery." Relying on testimony admitted during the hearing on his initial

14

unsuccessful request to be resentenced pursuant to *Miller*, petitioner asserts he had no reason to believe the robbery would become deadly because Brown had used the shotgun during four or five prior robberies but, as far as petitioner knew, no one had been injured. But, petitioner had personal experience with Brown's violent tendencies, having been the victim of Brown's beatings. (*People v. Brown et al.*, *supra*, E032616.) Whatever petitioner may or may not have believed about the plan for the robbery at the outset (to handcuff the manager to the toilet but not hurt him), he was clearly aware of the risk of death once the robbery was underway. He heard Brown say, "'We can make this real simple,'" then heard pounding and yelling coming from the bathroom, which he understood to mean the manager was struggling. And, when Rogers came out and asked where she could find some knives, petitioner thought to himself, "'[A]re they gonna stab him . . . ?'" Yet, he still told her where to find the knives. (*Ibid.*)

More importantly, the record contains strong evidence that petitioner knew or reasonably should have known from the start that the victim was likely to be killed during the robbery. The plan was not to rob a stranger or a victim who would probably not report the crime.[6] He and Brown were regular customers of the store, and they knew the manager well enough to know he regularly carried large amounts of cash in his wallet. The victim knew petitioner and his confederates well enough that, *after business hours*, he opened the security gate and let them inside. (*People v. Brown et al.*, *supra*,

---

[6] For instance, a defendant might steal from a drug dealer, an undocumented immigrant, or even a family member and reasonably assume the victim will be reluctant to report the crime to the police.

15

E032616.)  As we stated in our opinion from the denial of defendant's petition for resentencing, "When they committed the robbery, they made no attempt to disguise themselves.  And surely defendant did not want to get caught."  (*People v. Harper*, *supra*, E063475.)  "Certainly defendant did appreciate the risk of being identified.  When interviewed by a parole officer after his conviction, he said he felt 'scared' during the robbery because '[t]hey were not wearing masks.'  From the fact that Brown had a shotgun—as well as from defendant's knowledge of Brown's violent tendencies— defendant did not need great insight or experience to conclude that the victim would be killed."  (*Ibid*.)

Next, for the fourth factor, "Was the defendant present at the scene of the killing, in a position to facilitate or prevent the actual murder, and did his or her own actions or inaction play a particular role in the death," (*Banks*, *supra*, 61 Cal.4th at p. 803) petitioner asserts he was not in or near the bathroom but was at the front of the store acting as a lookout, and he was not positioned to either prevent or facilitate in the manager's death.  Although he was not in or immediately outside the bathroom, petitioner was not as far away as he suggests.  In addition to being the lookout, petitioner went inside the store and opened the cash register.  He was close enough to hear Brown talking to the manager, pounding and yelling coming from the bathroom, and the shotgun being fired.  (*People v. Brown et al.*, *supra*, E032616.)  But, as this court previously concluded, despite being at the scene of the robbery and close enough to hear the gunshot, "he made no attempt to help the victim."  (*Ibid*.)  And, by handing the shotgun to Brown, and by directing Rogers

16

to where she could find knives (after thinking to himself they might be used to stab the manager), petitioner's actions played a role in the murder.

About the last factor, "What did the defendant do after lethal force was used," (*Banks*, *supra*, 61 Cal.4th at p. 803) petitioner argues he merely got into the car and fled with Rogers and Brown. But, as the Attorney General argues, petitioner "did a bit more." After hearing the gunshot, petitioner did not go back inside and try to help the manager. "[I]nstead, he carried a VCR out to the car . . . ." (*People v. Brown et al.*, *supra*, E032616.) Back at the trailer park, he joined Brown and Rogers in joking about the robbery and "joked that they had money to do their laundry because he had taken all the quarters out of the cash register." (*Ibid*.) He was seen waving "'wads of money'" the night of the robbery. And, a little more than a week later, he fled to Reno with Brown. (*Ibid*.)

Defendant argues he "is less culpable than the defendants" in *In re Bennett* (2018) 26 Cal.App.5th 1002 and *In re Ramirez* (2019) 32 Cal.App.5th 384, "who were more involved in their respective underlying felonies" yet were found to have not been major participants under *Banks*, *supra*, 61 Cal.4th 788. We find those decisions to be distinguishable.

Although the defendant in *Bennett*, *supra*, 26 Cal.App.5th 1002 helped plan the armed robbery of a drug dealer, he knew his cohorts had firearms, and he did nothing to mitigate the possibility of violence and fled the scene once a cohort shot the dealer, the appellate court concluded the defendant was not a major participant because he had no knowledge of his cohort's violent nature and there was no evidence the defendant

17

planned to murder the dealer or that he anticipated use of deadly violence. (*Id.* at pp. 1020-1021.) In contrast, petitioner knew of Brown's violent nature. Unlike in *Bennett*, where the drug dealer was murdered when the defendant's "plan fell apart when [the dealer] started running instead of complying," (*id.* at p. 1020) petitioner either knew the plan from the beginning was to kill the manager or, at a minimum, he knew the plan to merely subdue the manager had already fallen apart when he heard yelling and pounding coming from the bathroom. And, he admitted to suspecting Rogers and Brown were going to stab the manager when Rogers walked up and asked where she could find knives. In other words, petitioner already knew or reasonably should have known Rogers and Brown had decided to kill the manager *before* they slashed his throat and shot him with the shotgun. Yet, petitioner did nothing to prevent the murder or flee the scene before it happened. Instead, he stayed at his post as the lookout and, after hearing the gunshot, helped load stolen merchandise into the car and fled with Rogers and Brown. (*People v. Brown et al.*, *supra*, E032616.) Petitioner was more culpable than the defendant in *Bennett*, not the other way around.

In *In re Ramirez*, *supra*, 32 Cal.App.5th 384, the defendant supplied the guns that were ultimately used in an attempted robbery and murder, but there was no evidence he planned a specific robbery or that he planned a murder. (*Id*. at p. 404.) Moreover, the appellate court concluded that, although the defendant was close enough to hear the victim being shot, he was not at the immediate location of the shooting and was therefore not "close enough to exercise a restraining effect on the crime or his colleagues." (*Id*. at p. 405.) As noted, *ante*, petitioner was not inside or immediately outside the bathroom

18

where the manager was shot. But, he was close enough to hear Brown talking to the manager and yelling and pounding coming from the bathroom, which he took to mean the manager was resisting. And, unlike the defendant in *Ramirez*, petitioner was positioned to attempt to exercise a restraining effect—at least on Rogers. When she asked where to find the knives, petitioner thought to himself she or Brown might use one to stab the manager. But, rather than say he did not know where the knives could be found, he directed Rogers to the exact aisle in the store where she found them. (*People v. Brown et al.*, *supra*, E032616.)

For the foregoing reasons, we conclude the record contains substantial evidence to support the conclusion that petitioner was a major participant in the robbery.

B.    *Reckless Indifference to Human Life.*

Similarly, applying the factors from *Clark*, *supra*, 63 Cal.4th 522, and considering the totality of the circumstances, we conclude the record demonstrates petitioner acted with reckless disregard for human life.

Addressing the first factor, the "defendant's awareness that a gun [or other deadly weapon] will be used," whether the defendant personally used a lethal weapon, and the number of lethal weapons used (*Clark*, *supra*, 63 Cal.4th at pp. 618-619), petitioner acknowledges he knew Brown would "brandish" a shotgun during the robbery, as he had in four or five prior robberies, but petitioner contends he had no idea Brown would fire it this time. And, although he acknowledges he briefly handled the shotgun when he gave it to Brown, petitioner correctly states he did not use a weapon. True, petitioner did not personally use a weapon, but his statements during the robbery clearly show he was

19

indifferent to whether Brown and Rogers used deadly violence. Before the shooting, Brown came out to where petitioner was and said, "'I don't know about this.'" (*People v. Brown et al.*, *supra*, E032616.) Petitioner replied, "'[W]*hatever you want to do* is fine with me . . . just as long as I'm not involved.'" (*Ibid.*, italics added.) Rogers then walked out and asked where she could find knives. (*Ibid.*) To repeat, despite thinking Brown and Rogers might use a knife to stab the manager, petitioner told Rogers exactly where she could find one. Petitioner heard yelling and pounding, which he understood to mean the manager was resisting. And, when Brown came out again and asked petitioner if he was "'cool,'" petitioner replied, "'[Y]eah[,] cool, just . . . do *whatever you need to do* so we can get out of here and hurry up.'" (*Ibid.*, italics added.)

Regarding the second factor, the defendant's "[p]roximity to the murder and the events leading up to it" and the opportunity to either restrain the crime or aid the victim (*Clark*, *supra*, 63 Cal.4th at pp. 619-620), petitioner contends he was not present in the bathroom, he did not see what was happening, and he had no chance to restrain the crime or provide aid to the manager. As we have already concluded, *ante*, the evidence does not show he was as physically removed from the robbery as he now suggests. Although he was not *inside* the bathroom, petitioner heard Brown tell the manager, "'We can make this real simple,'" he heard pounding and yelling coming from the bathroom, and (quite reasonably) he concluded the manager was resisting Roger's and Brown's attempts to handcuff him. (*People v. Brown et al.*, *supra*, E032616.) When Rogers came out and asked about knives, petitioner (again, reasonably) surmised she and Brown had given up on trying to restrain the manager and had decided to stab him. At that moment, petitioner

20

had the opportunity to exercise some restraining influence on the events by telling Rogers he did not know where the knives were. Instead, he told her where to find them. And, after hearing the gunshot, petitioner did nothing to aid the manager. (*Ibid.*)

The parties agree the third factor, whether the murder took place "at the end of a prolonged period of restraint of the victim[] by defendant" (*Clark*, *supra*, 63 Cal.4th at pp. 620-621), does not weigh against petitioner because he had little or no direct involvement with the store manager. We too agree.

As for the fourth factor, the "defendant's knowledge of . . . a cohort's likelihood of killing" (*Clark*, *supra*, 63 Cal.4th at p. 621), petitioner again contends there is no evidence he knew Brown would act violently during the robbery.[7] What we have already said in the context of the *Banks* analysis applies here. Petitioner knew about Brown's violent tendencies because he was the victim of Brown's beatings. (*People v. Brown et al.*, *supra*, E032616.) Even if petitioner believed the plan was only to handcuff the manager to the toilet but not hurt him, he knew of the risk of death once the robbery was underway. He could hear Brown say, "'We can make this real simple,'" and he heard pounding and yelling coming from the bathroom, which he took to mean the manager

---

[7] Citing the probation officer's sentencing report, petitioner also argues he had no knowledge that Rogers would use violence either. The report states that, when he was interviewed in juvenile hall after his arrest, petitioner said Rogers "'was never a violent person in front of me'" so he "thought nothing" of her asking for a knife. But, to repeat, in his videotaped statement to the police, petitioner admitted he thought to himself, "'[A]re they gonna stab him . . . ?'" (*People v. Brown et al.*, *supra*, E032616.) In other words, he may not have known *before* the robbery that Rogers could be violent but, during the robbery, he reasonably surmised she might.

was struggling.  And, when Rogers asked about knives, petitioner thought, "'[A]re they gonna stab him . . . ?'"  (*Ibid*.)

Finally, for the fifth factor, whether the defendant made an "effort[] to minimize the risks of violence in the commission of a felony" (*Clark*, *supra*, 63 Cal.4th at pp. 621-622), petitioner asserts he "was not in a position to minimize the risk" because he did not plan the robbery, he only briefly saw the manager, his role was limited to being the lookout, and he did not observe what happened in the bathroom.  We agree the evidence only shows petitioner was present during the planning of the robbery, and he had little or no direct contact with the store manager.  (*People v. Brown et al.*, *supra*, E032616.)  But, the evidence amply demonstrates petitioner was more than a mere lookout.  He entered the store with Rogers and Brown and handed the shotgun to Brown.  He opened the cash register and helped take stolen merchandise from the store to the car.  He told Rogers where she could find the knife that was used to slash the manager's throat.  And, although he may not have had the opportunity to minimize the risk of violence during the planning stage, he did nothing to minimize the risk of violence when it became clear the original plan had unraveled.  (*Ibid*.)

In sum, we conclude the record contains substantial evidence that petitioner acted with reckless disregard for human life.

C.     *Whether Petitioner's Youth Should Be Considered Here as Decreasing His Culpability.*

Finally, petitioner argues his youth at the time of the crime decreases his culpability.  In his brief, the Attorney General contended petitioner's youth is irrelevant

to the analyses under *Banks*, *supra*, 61 Cal.4th 788 and *Clark*, *supra*, 63 Cal.4th 522.

However, during oral argument, the Attorney General conceded youth may be one of several factors to consider in an appropriate case, but he argued it does not change the result in this case. Assuming but not deciding that youth is an appropriate factor, we agree with the Attorney General that the result is the same.

The Legislature has already made youth a factor that must be considered when determining whether a 16- or 17-year-old found guilty of special circumstance murder should be sentenced to LWOP or 25 years to life. (§ 190.5, subd. (b).) Youth must also be considered when, after having served 25 years, a minor defendant becomes eligible for parole at a youth offender parole hearing. (§ 3051, subd. (b)(3).) At that time, the Board of Parole Hearings is required to "give great weight to the diminished culpability of juveniles as compared to adults, the hallmark features of youth, and any subsequent growth and increased maturity of the prisoner in accordance with relevant case law." (§ 4801, subd. (c); see Cal. Code Regs., tit. 15, §§ 2445, subd. (b), 2446.) *Banks*, *supra*, 61 Cal.4th 788 and *Clark*, *supra*, 63 Cal.4th 522 did not address youth,[8] and nothing in those decisions indicates youth must be incorporated as a factor into the analysis of whether a special circumstance applies in the first place. However, as noted *ante*, those courts stated the factors they articulated were not exclusive or necessarily determinative. (See *Banks*, at p. 803; *Clark*, at p. 618.)

---

[8] Although youth would appear to be an obvious consideration when determining whether a defendant acted with reckless indifference to human life, the defendant in *Clark* was a grown man at the time of the murder, so the Supreme Court had no occasion to decide whether youth was a factor. (See *Clark*, *supra*, 63 Cal.4th at p. 545.)

Recently, three appellate courts have concluded youth is an appropriate consideration: *People v. Harris* (2021) 60 Cal.App.5th 939 (*Harris*), review granted Apr. 28, 2021, S267802, *In re Moore* (2021) 68 Cal.App.5th 434 (*Moore*), and *People v. Ramirez* (2021) 71 Cal.App.5th 970 (*Ramirez*).

The defendant in *Harris* was 17 years old when he was arrested and appealed from the denial of his petition for resentencing under section 1170.95. (*Harris*, *supra*, 60 Cal.App.5th at pp. 960-961.) In his original trial, the jury found true a special circumstance allegation that the murder was committed during the commission of arson, and the trial court sentenced him to 25 years to life. He argued he could no longer be convicted of felony murder under the amendments to sections 188 and 189 made by Senate Bill No. 1437 because he was not a major participant in the underlying arson and he did not act with reckless disregard for human life, and he argued the trial court erred by denying his petition without conducting an evidentiary hearing. (*Harris*, at pp. 944-945.) In contrast to this court's decision in *People v. Jones* (2020) 56 Cal.App.5th 474, review granted Jan. 27, 2021, S265854, the appellate court in *Harris* concluded the defendant's special circumstance finding did not preclude relief under section 1170.95 as

a matter of law and he could challenge the continued validity of that finding at a hearing on his petition for resentencing.**9** (*Harris*, at pp. 954-958.)

In the context of analyzing the *Banks*, *supra,* 61 Cal.4th 788 factors—some of which the court indicated weighed in favor of concluding the defendant was a major participant—the *Harris* court concluded the defendant's youth was a proper consideration. "[G]iven Harris's youth at the time of the crime, particularly in light of subsequent case law's recognition of the science relating to adolescent brain development (see, e.g., *Graham v. Florida* (2010) 560 U.S. 48 . . . ; *Miller v. Alabama* (2012) 567 U.S. 460 . . . ; *People v. Gutierrez* (2014) 58 Cal.4th 1354 . . .), it is far from clear that Harris was actually aware 'of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants.' (*Banks*, at p. 803.)" (*Harris*, *supra*, 60 Cal.App.5th at p. 960.) The court reversed the denial of the defendant's petition for resentencing and remanded for the trial court to issue an order to show cause and conduct a hearing and engage in appropriate factfinding. (*Id*. at pp. 960-961.)

Like petitioner, the defendant in *Moore* was 16 years old at the time of the offense, challenged his robbery-homicide special circumstance finding in a petition for writ of habeas corpus, and argued he was not a major participant who acted with reckless

---

**9** The Supreme Court granted review in *People v. Harris* (Apr. 28, 2021, S267802) ___ Cal.5th ___ [2021 Cal. Lexis 2890], and that case is being held pending a resolution of *People v. Strong*, review granted Mar. 10, 2021, S266606, in which the Supreme Court will decide: Does a felony-murder special circumstance finding (Pen. Code, § 190.2, subd. (a)(17)) made before *Banks* and *Clark* preclude a defendant from making a prima facie showing of eligibility for relief under Penal Code section 1170.95? (See *People v. Strong*, S266606.)

disregard for human life. (*Moore*, *supra*, 68 Cal.App.5th at p. 439.) In the context of analyzing whether the evidence established the defendant acted with reckless disregard for human life, the appellate court stated it would "go one step further" than *Harris*, *supra*, 60 Cal.App.5th 939 and held "a defendant's youth is a relevant factor in determining whether the defendant acted with reckless indifference to human life."[10] (*Moore*, at p. 454.)

The court purported to find that, viewing the totality of the circumstances, the defendant did not act with reckless disregard for human life. (*Moore*, *supra*, 68 Cal.App.5th at pp. 439, 451, 455.) However, with little or no analysis, the court seems to have suggested the defendant's youth, by itself, was the *decisive* factor in determining whether the defendant acted with reckless disregard for human life. "In this case, [the defendant], as a 16-year-old, lacked "'the experience, perspective, and judgment'" to adequately appreciate the risk of death posed by his criminal activities. [Citations.] To the extent the *Clark* factors discussed *ante* support a finding of reckless indifference for an adult—an issue we do not decide today—*those factors undoubtedly preclude such a finding when viewed from the lens of* [*defendant's*] *youth*." (*Moore*, at p. 454, italics

---

**10** As here, the defendant in *Moore* filed his petition for writ of habeas corpus directly in the California Supreme Court. The Supreme Court issued an order to show cause, returnable for the Court of Appeal to consider "why petitioner is not entitled to relief based on his claim that there was insufficient evidence to support the robbery-murder special circumstance finding *and whether petitioner's youth at the time of the offense should be one of the factors* considered under *People v. Clark* (2016) 63 Cal.4th 522, 609-623 . . . and *People v. Banks* (2015) 61 Cal.4th 788. . . ." (*In re Moore* (Aug. 16, 2020, S259591) ___ Cal.5th ___ [2020 Cal. Lexis 8666], italics added.)

added.)  Therefore, the court granted the petition for writ of habeas corpus, vacated the special circumstance finding, and remanded the matter for resentencing.  (*Id*. at p. 455.)

More recently, the defendant in *Ramirez*, who was 15 years old[11] at the time of the offense, petitioned the trial court to be resentenced pursuant to section 1170.95 and argued his special circumstance finding was not supported by the evidence.  (*Ramirez*, *supra*, 71 Cal.App.5th at pp. 982-983.)  On appeal from the denial of his petition, the Court of Appeal cited *Harris* and *Moore* for the proposition that youth is an appropriate factor to consider when determining whether a minor defendant who was not the actual killer acted with reckless indifference to human life.  (*Ramirez*, at p. 987.)

Applying the factors expressly articulated in *Clark*, the Court of Appeal held there was no substantial evidence in the record of conviction to demonstrate the defendant acted with reckless indifference for human life when he aided and abetted the actual shooter during a carjacking.[12]  (*Ramirez*, *supra*, 71 Cal.App.5th at pp. 987-990.)  In addition, the court noted, "Ramirez's youth at the time of the shooting greatly diminishes any inference he acted with reckless disregard for human life by participating in the attempted carjacking knowing [the actual shooter] was armed.  As argued by Ramirez,

---

[11]  The defendant in *Ramirez* also argued that, because he was 15 years old at the time of the offense, under Proposition 57 and Senate Bill No. 1391 (2017-2018 Reg. Sess.), his case had to be remanded to the juvenile court for an appropriate disposition. (*Ramirez*, *supra*, 71 Cal.App.5th at pp. 982-983.)

[12]  The opinion did not address the threshold question of whether a defendant may challenge a final, undisturbed special circumstance finding in a petition for resentencing under section 1170.95.  As noted, *ante*, footnote 9, that issue is presently before the Supreme Court.

the "'hallmark features'" of youth include "'immaturity, impetuosity, and failure to appreciate risks and consequences.'" (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1377. . . , quoting *Miller v. Alabama*, *supra*, 567 U.S. at p. 477 . . .) "'[T]he background and mental and emotional development of a youthful defendant [must] be duly considered" in assessing his culpability.' (*Miller*, at p. 476 . . .) '[T]hey "are more vulnerable or susceptible to . . . outside pressures" than adults . . . .' (*J.D.B. v. North Carolina* (2011) 564 U.S. 261, 272 . . . .) A juvenile's immaturity and failure to appreciate the risks and consequences of his or her actions bear directly on the question whether the juvenile is subjectively "'aware of and willingly involved in the violent manner in which the particular offense is committed"' and has 'consciously disregard[ed] "the significant risk of death his or her actions create.'" (*Scoggins*, *supra*, 9 Cal.5th at p. 677; see *Moore*, *supra*, 68 Cal.App.5th at p. 453; *People v. Harris*, *supra*, 60 Cal.App.5th at p. 960.)" (*Ramirez*, at pp. 990-991.)

Unlike in *Moore*, the Court of Appeal in *Ramirez* did not merely hold, with no analysis, that the defendant's youth undoubtedly established he had not acted with reckless indifference for human life. Instead, the court considered evidence in the record about the defendant's youth that bore directly on the *Banks/Clark* analysis. "As we observed in *Ramirez*'s direct appeal, 'there was evidence to support a finding that Ramirez was influenced by peer pressure. He told [a police officer] that he did not want to approach the car, but [the actual shooter] insisted. He was afraid that if he did not help [the shooter], the neighborhood would find out and someone might kill him later.' [Citation.] Although 'Ramirez knew there was going to be a carjacking and that [the

28

shooter] was going to use a gun' (*ibid*.), Ramirez's age may well have affected his calculation of the risk of death posed by using the firearm in the carjacking, as well as his willingness to abandon the crime. The evidence is not sufficient to prove 15-year-old Ramirez was 'subjectively aware that his actions created a graver risk of death' than any other armed carjacking. (*Moore*, *supra*, 68 Cal.App.5th at p. 454; see *Scoggins*, *supra*, 9 Cal.5th at p. 677.)" (*Ramirez*, at p. 991.) Therefore, the court reversed the order denying the defendant's petition for resentencing and remanded for the trial court to grant the petition and vacate his murder conviction. (*Id*. at pp. 993, 1000.)

We need not decide today whether youth is a factor that *must* be considered whenever the *Banks/Clark* analysis is conducted for a defendant who was a minor at the time of the offense. Assuming without deciding that youth is a proper factor among many we *may* consider under the totality of the circumstances, we are persuaded by the measured approaches taken by the courts in *Harris*, *supra*, 60 Cal.App.5th 939 and *Ramirez*, *supra*, 71 Cal.App.5th 970.[13] We decline to follow *Moore*, *supra*, 68 Cal.App.5th 434 to the extent it can be read to suggest that youth is, by itself, a *decisive* factor whenever the defendant was a minor at the time of the offense.

---

[13] However, for the reasons stated in this court's opinion in *People v. Jones*, *supra*, 56 Cal.App.5th 474, we must disagree with *Harris* and *Ramirez* on the threshold question of whether the special circumstance finding may be challenged in a resentencing proceeding under section 1170.95. (See *Estate of Sapp* (2019) 36 Cal.App.5th 86, 109, fn. 9 ["Absent a compelling reason, the Courts of Appeal are normally loath to overrule prior decisions from another panel of the same undivided district or from the same division."].)

As indicated, *ante*, after this court affirmed his conviction, petitioner requested the trial court resentence him to 25 years to life pursuant to *Miller v. Alabama*, *supra*, 567 U.S. 460. Defendant presented evidence to establish that, considering his youth and immaturity, his culpability for the murder was greatly reduced and did not justify a sentence of LWOP. After applying the five factors set forth in *People v. Gutierrez* (2014) 58 Cal.4th 1354 for determining whether a minor may be sentenced to LWOP, the trial court ruled petitioner was "'a rare juvenile offender'" whose "'irreparable corruption'" was such that "'he should never be allowed to dwell among free men.'" (*People v. Harper*, *supra*, E063475.)

For instance, with respect to the hallmark features of youth (*People v. Gutierrez*, *supra*, 58 Cal.4th at p. 1388), "[t]he trial court noted that defendant was only a few days short of his 17th birthday and thus 'essentially he [was] a 17-year–old.' It added that he 'held himself out as being a 19-year-old and was accepted as a 19-year-old, so he [was] not that immature. He certainly had an appreciation for the risks and consequences of what goes on in a criminal behavior, because one of his very best friends was killed at age 14 in a drive-by shooting, and he said he missed his friend greatly.'" (*People v. Harper*, *supra*, E063475.) On appeal, petitioner argued the fact he told people he was 19 years old did not mean he was cognitively or emotionally an adult. We disagreed, stating, "The point . . . is not just he told people this, but that they believed him. In other words, he was able to pass for 19." (*Ibid.*)

For the second factor, "'environmental vulnerabilities'" (*People v. Gutierrez*, *supra*, 58 Cal.4th at p. 1389), petitioner presented evidence that his home life was

"'brutal'" and "'dysfunctional,'" and, as a child, he was exposed to violence in the community. (*People v. Harper, supra*, E063475.) Although it noted petitioner "'had a rough youth,'" the trial court gave it "'little weight.'" On appeal, this court noted petitioner's "abuse and neglect" by his father "were not trivial," but we also noted the abuse mostly came to an end when he was seven years old and he was returned to his mother. Moreover, we noted, "Many of the bad things that happened to him during his childhood could be viewed as the result of his own inclinations. He was shot at because he chose to hang out with a gang. He was in a series of juvenile placements because he used drugs, sold drugs, and stole. Repeatedly running away from those placements was hardly a way to find stability." (*Ibid.*)

Relevant here, the trial court found the third factor, the circumstances of the homicide offense (*People v. Gutierrez, supra*, 58 Cal.4th at p. 1389), strongly supported a sentence of LWOP. "The trial court stated: '[I]t's very clear that he knew what was going to take place. He was aware of the gun. He was aware of the knives. . . . [H]e showed Miss Rogers where the knives were, . . . he actually gave her the gun.' [¶] It also stated: 'In my opinion, he did have an intent to kill, not only by these acts, but by the fact that the victim knew each of these three persons. It was clear there was an intent to rob and thus presumably an intent not to get caught, thus the intent to kill is inherent in such an act, and it is hard for me to conceive that he entered that store without the understanding that . . . [the victim] would be killed.' [¶] It added: 'At one point . . . Brown came out of the back room and seemed to be a little bit hesitant as to what he should do. . . . And Mr. Harper said, "Just go do what you have to do and let's get out of

31

here." Again, with no humanity involved in simply wanting to get this crime . . . over and done with. [¶] . . . Later he bragged about the items he stole. . . . He bragged about the fact that, "Now we can do our laundry. I have a fistful of quarters." And then he flashed bundles of hundreds or 50s or 20s, whatever it was. And he seemed to be indifferent to the fact that a life had been taken.'" (*People v. Harper*, *supra*, E063475.)

As indicated, on appeal, this court held the evidence strongly supported the trial court's conclusion that petitioner knew the victim could identify him and his confederates and, therefore, he knew from the beginning the plan was to kill the victim. (*People v. Harper*, *supra*, E063475.) And, this court agreed with the trial court that testimony from a clinical and forensic psychologist did not establish Brown dominated petitioner and induced him to participate in the robbery. "Quite the contrary, Brown planned to rob the 99 Cent Store without involving defendant. Defendant decided to go along on his own initiative, simply because he did not want to stay at the trailer park with Brown's brother. The trial court noted that before defendant even met Brown, he was already involved with a gang; he sold drugs, stole cars, and assaulted his mother with a chain. It concluded that '[f]or him to go into the 99 Cent Store armed with a firearm . . . , intending to steal . . . , in the company of others [was] in perfect harmony with the life he led up to that point.'" (*Ibid.*)

True, after a federal district court issued a writ of habeas corpus, the trial court resentenced petitioner to 25 years to life. But, it is one thing to say petitioner should eventually be eligible for a parole hearing because he was a minor at the time of the offense, and quite another to say he did not have the maturity to have acted with reckless

32

disregard for human life. The evidence demonstrates petitioner willingly participated in the robbery despite knowing there was a very high risk—if not a certainty—the victim would die. His conduct during the robbery (giving the shotgun to Brown as they entered the store, telling Rogers where she could find knives, taking merchandise from the store), and his statements during and after the robbery that reflected his callousness or indifference to whether the victim lived or died, all show he did not act like an immature, naïve, or impulsive adolescent. Therefore, we conclude petitioner's youth at the time of the offense in no way undermines what we have concluded, *ante*: the record contains substantial evidence he was a major participant in the robbery and he acted with reckless disregard for human life.

## VI.

## DISPOSITION

The petition for writ of habeas corpus is denied.

CERTIFIED FOR PUBLICATION

McKINSTER
J.

We concur:

RAMIREZ
P. J.

SLOUGH
J.